FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 2 3 2026

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

In the Matter of the Conservatorship of

**PEOPLE TRUST COMMUNITY
FEDERAL CREDIT UNION,**

Charter No. 24940

Case No. 4:26-cv-83-LPR

NCUA Docket No. 26-0001-SR

This case assigned to District Judge Rudofsky
and to Magistrate Judge Volpe

## APPLICATION FOR RELIEF FROM CONSERVATORSHIP

### INTRODUCTION

Pursuant to Section 206(h)(3) of the Federal Credit Union Act, 12 U.S.C. § 1786(h)(3), Arlo Washington, in his capacity as Founder and former Chief Executive Officer of People Trust Community Federal Credit Union (PTCFCU), and as a member of the credit union, applies to this Court for relief from the Order of Conservatorship entered by the National Credit Union Administration Board (NCUA Board) on January 14, 2026, and served on January 16, 2026.

This application is filed within ten days of service as required by the Order. The conservatorship was imposed without advance notice and without opportunity to be heard. The administrative record upon which NCUA relied is incomplete and excludes material information regarding vendor failures, examiner conflicts of interest, and governance interference. The ten-day filing period has limited Applicant's ability to develop evidence, but the facts available support the relief requested.

Applicant does not seek to avoid oversight. Applicant seeks a stay of conservatorship actions pending judicial review of a deficient record, and an opportunity to present evidence that contradicts the factual premises of the conservatorship determination.

### JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 12 U.S.C. § 1786(h)(3). Venue is proper in the Eastern District of Arkansas, Western Division, as PTCFCU's principal office is located at 4103 E Broadway Street, North Little Rock, Arkansas 72117.

### PARTIES

*Applicant*

Arlo Washington is the founder, and former Chief Executive Officer of People Trust Community Federal Credit Union. He is a member of PTCFCU with a direct interest in the institution. Mr.

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

In the Matter of the Conservatorship of

**PEOPLE TRUST COMMUNITY FEDERAL CREDIT UNION,**

Charter No. 24940

NCUA Docket No. 26-0001-SR

# APPLICATION FOR RELIEF FROM CONSERVATORSHIP

## INTRODUCTION

Pursuant to Section 206(h)(3) of the Federal Credit Union Act, 12 U.S.C. § 1786(h)(3), Arlo Washington, in his capacity as Founder and former Chief Executive Officer of People Trust Community Federal Credit Union (PTCFCU), and as a member of the credit union, applies to this Court for relief from the Order of Conservatorship entered by the National Credit Union Administration Board (NCUA Board) on January 14, 2026, and served on January 16, 2026.

This application is filed within ten days of service as required by the Order. The conservatorship was imposed without advance notice and without opportunity to be heard. The administrative record upon which NCUA relied is incomplete and excludes material information regarding vendor failures, examiner conflicts of interest, and governance interference. The ten-day filing period has limited Applicant's ability to develop evidence, but the facts available support the relief requested.

Applicant does not seek to avoid oversight. Applicant seeks a stay of conservatorship actions pending judicial review of a deficient record, and an opportunity to present evidence that contradicts the factual premises of the conservatorship determination.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 12 U.S.C. § 1786(h)(3). Venue is proper in the Eastern District of Arkansas, Western Division, as PTCFCU's principal office is located at 4103 E Broadway Street, North Little Rock, Arkansas 72117.

## PARTIES

*Applicant*

Arlo Washington is the founder, and former Chief Executive Officer of People Trust Community Federal Credit Union. He is a member of PTCFCU with a direct interest in the institution. Mr.

1

Washington operated a community development financial institution before founding PTCFCU in 2022. His work was featured in the Academy Award-nominated documentary *The Barber of Little Rock*.

### *Respondent*

The National Credit Union Administration Board is the federal agency responsible for chartering and supervising federal credit unions. The NCUA Board issued the Order of Conservatorship.

## STATEMENT OF FACTS

### I. Institutional Background

People Trust Community Federal Credit Union was chartered on September 14, 2022, as a federally insured, low-income designated credit union. It serves low- and moderate-income communities in Pulaski and Saline Counties, Arkansas. PTCFCU is the only minority-owned credit union in Arkansas and the first in forty years.

As a de novo institution, PTCFCU operated under a Letter of Understanding and Agreement that imposed restrictions on lending, investments, contracts, and operations. Management accepted these constraints and operated in accordance with them.

### II. Vendor System Failures

Prior to chartering, People Trust Community Federal Credit Union selected its core processing system based on industry recommendations and perceived regulatory familiarity. Approximately six months after chartering, the core system experienced a ransomware incident that resulted in a full operational disruption lasting nearly two months. This prolonged outage materially impacted early operations and significantly informed subsequent decisions regarding technology architecture, cybersecurity posture, vendor risk management, and the institution's overall approach to systems resilience.

Fidelity Information Systems ("FIS") Mercury as its core processor, with integrated services from ("AMI") Information Systems and Worldwide Interactive Services ("WWIS"). These were bundled services sold to PTCFCU.

Beginning in early 2023. Throughout 2023 and 2024, the vendor systems continued to fail. FIS sold the Mercury platform without notice and ceased servicing PTCFCU. Further, AMI and WWIS did not provide effective support.  As a result, the management team escalated concerns to all vendors without obtaining remediation.

The vendor failures prevented reliable reconciliation, created processing delays and errors, and impaired the institution's ability to produce accurate regulatory reports. These were system failures, not management failures.

On August 9, 2025, Mr. Washington sent a formal complaint to NCUA documenting the vendor failures and requesting regulatory intervention. The complaint was sent to NCUA Regional Office, NCUA Office of Examination and Insurance, and other stakeholders. NCUA did not respond and did not investigate. More importantly, NCUA failed to require vendor remediation.

## III. Examiner Rotation and Inconsistent Supervision

PTCFCU was examined by four different NCUA examiners over a two-year period. Each examiner issued directives that overlapped or conflicted with prior requirements. The examination cycles continued despite the documented vendor failures. Management was required to respond using systems that were unreliable.

The June 2025 examination forms the basis for the conservatorship determination. On June 25, 2025, Acting Southern Region Supervisor Lillian Bain and Examiner Nathan Franklin told management that the entire management team would be fired and that NCUA would consider taking over the credit union. These statements were made without context or guidance.

Mr. Washington filed a complaint with NCUA Board Member Kyle Hauptman on June 25, 2025. The complaint documented the examination conduct and requested a review and a temporary supervisory reprieve. NCUA did not respond.

## IV. Examiner Conflicts of Interest

### A. Nathan Franklin: Revolving Door and Competitive Conflict

Nathan Franklin served as an NCUA Principal Examiner from February 2011 through August 2025. During this period, he examined PTCFCU and issued findings that affected the institution's supervisory standing and capital position.

Before joining NCUA, Mr. Franklin worked as a Consumer Loan Officer at Telco Federal Credit Union from March 2009 to January 2011. In August 2025, immediately after leaving NCUA, Mr. Franklin returned to Telco Federal Credit Union as Senior Vice President of Lending.

Telco Federal Credit Union is a direct market competitor of PTCFCU. Telco publicly opposed PTCFCU's expansion during the period when Mr. Franklin was conducting examinations.

Mr. Franklin's return to a competitor institution immediately after issuing examination findings creates an appearance that his examination conduct may have served the competitive interests of his future employer rather than regulatory neutrality.

Federal ethics regulations at 5 C.F.R. § 2635.502 require NCUA employees to maintain impartiality in the performance of official duties. The record does not reflect that Mr. Franklin recused himself from PTCFCU examinations or obtained ethics waivers.

### B. Ashley Mangham: Spousal Relationship with Servicing Institution

Ashley Mangham is an NCUA Principal Examiner. The Order of Conservatorship identifies her as a sub-agent of the Conservator.

Ms. Mangham is married to Eric Mangham, who serves as Executive Vice President of Arkansas Federal Credit Union. Arkansas Federal Credit Union is a federally insured credit union subject to NCUA supervision.

Arkansas Federal Credit Union is currently servicing PTCFCU members during the conservatorship. Arkansas Federal Credit Union is positioned to benefit from the conservatorship through member acquisition, operational relationships, and market position.

Federal ethics regulations at 5 C.F.R. § 9601.103 prohibit NCUA employees from engaging in outside employment or relationships with credit unions without prior written approval. Where an

3

NCUA employee's spouse holds a senior executive role at a credit union that is servicing members of a conservatorship, strict separation and disqualification are required.

The record does not reflect that Ms. Mangham disclosed the relationship, recused herself from PTCFCU matters, or obtained an ethics waiver. Her participation in the conservatorship as a sub-agent creates a direct conflict where her spouse's employer benefits from the action.

### C. Auditor Referral with Prior Professional Relationship

An NCUA Principal Examiner referred PTCFCU to an external auditor. The auditor delayed substantive engagement until the day of the examination, issued same-day findings, and charged the credit union immediately without advance notice, draft findings, or opportunity for management response.

One of PTCFCU's Principal Examiners had a prior professional relationship with the referred auditor. This relationship was not disclosed to management. No independence safeguards were communicated. The referral process deviated from standard audit norms.

## V. Governance Breakdown and Escalation to Convert to Conservatorship

According to the National Credit Union Administration's Memorandum and Order for Conservatorship, the June 30, 2025, examination identified alleged unsafe and unsound conditions relating to PTCFCU's management and governance. However, during a meeting with management on December 3, 2025, NCUA represented that PTCFCU would be afforded adequate time to address the examination findings and submit a revised business plan.

PTCFCU did not receive the formal findings from the June 30, 2025, examination until late October 2025, nearly three months after the examination concluded. As regulatory pressure increased, internal governance challenges emerged. During this period, the former Board Chair, Michael Pridgeon, requested that management retain Ms. Quinn Gibson Lewis as a consultant, representing that she possessed relevant banking policy and procedural expertise. In an effort to comply with NCUA guidance and remediate cited deficiencies, management agreed to a limited three-month consulting arrangement.

Subsequently, management learned that Ms. Lewis was the Board Chair's significant romantic partner, creating an undisclosed conflict of interest. Management determined that continued engagement was not in the best interests of PTCFCU or consistent with principles of sound governance and regulatory intent. Thereafter, the former Board Chair and the consultant began interfering in daily operations and attempting to undermine executive authority through improper channels. Management terminated the consulting engagement and took corrective actions to limit further governance and operational risk.

Following receipt of the examination findings, management undertook proactive and structured remediation efforts, including weekly internal meetings and coordinated engagement with regulators. These actions included, but were not limited to, as follows:

- December 3, 2025: Meeting with NCUA to confirm collaboration and remediation expectations

4

- December 11, 2025: Board meeting to review examination findings
- December 18, 2025: Presentation of a revised stabilization-focused business plan
- December 21, 2025: Written reaffirmation and submission of the revised business plan
- December 22, 2025: Formal submission of the revised business plan and Board memorandum to NCUA

On January 3, 2026, Mr. Pridgeon submitted his resignation to the Board of Directors, copying the National Credit Union Administration, and asserted false allegations regarding deficiencies in PTCFCU's Board governance. Despite NCUA's indication that a January 16, 2026, meeting would address recapitalization and prior Board resignations, PTCFCU was instead notified of conservatorship. Management was not afforded an opportunity to reconcile these conflicting submissions, provide context, or address the resignation letter before the NCUA imposed conservatorship.

## VI. Capital Deterioration

The Confidential Statement of Grounds for Conservatorship identifies declining net worth as a basis for the conservatorship. As of June 30, 2025, PTCFCU's net worth ratio was 7.06 percent. By August 31, 2025, it had declined to 3.12 percent.

Net worth deterioration was caused by vendor price escalation, fraud losses through insecure vendor payment systems, operational inefficiencies driven by system unreliability, and negative share charge-offs totaling seventy-two thousand dollars that the June examination required. The charge-off corrected accounting records but did not represent new losses.

Management responded by engaging Aux, an external accounting firm, to perform general ledger cleanup. Management initiated a planned core system conversion to a more reliable platform. Management terminated high-risk payment channels to protect members. These were risk mitigation actions, not avoidance of problems.

## VII. Withheld Grant Funds

In 2024, PTCFCU was approved for a Community Development Revolving Loan Fund Grant and an Urgent Need Grant totaling sixty-five thousand dollars. Management was told that no further action was required to receive the funds. To date, no portion of the approved funds has been disbursed. No written explanation, deficiency notice, or rescission has been provided.

The withholding of approved funds during a critical recovery period worsened liquidity and capital pressures.

## VIII. The Conservatorship Determination

On January 14, 2026, the NCUA Board issued an Order of Conservatorship and Confidential Statement of Grounds for Conservatorship. The Order appointed NCUA as Conservator and transferred possession and control of PTCFCU to the agency. Mr. Washington was not provided advance notice. The credit union was not afforded a hearing.

The Confidential Statement characterizes PTCFCU as uncapitalized and cites unsafe and unsound conditions including declining net worth, recordkeeping concerns, unsound lending practices, inadequate internal controls, and BSA violations.

The Statement does not address the vendor causation documented in the August 9, 2025 complaint. The Statement does not address the examiner conduct issues raised in the June 25, 2025 complaint. The Statement does not address the examiner conflicts of interest. The Statement does not explain how the conflicting board and management submissions were reconciled. The Statement does not explain why approved grant funds were withheld.

The conservatorship was based on an incomplete record that excluded material information.

## IX. Post-Conservatorship Evidence

Since conservatorship was imposed on January 16, 2026, Mr. Washington has cooperated with the Conservator's staff. He has provided access to records and responded to inquiries.

The Conservator's staff have not identified fraud, embezzlement, or gross negligence. Member accounts have been verified as accurate. Operations have continued without material incident.

The absence of findings of fraud or gross mismanagement contradicts the characterization in the Confidential Statement that management is unable to safely operate PTCFCU.

## X. Community Context

PTCFCU is the only Black-owned credit union in Arkansas. It serves a predominantly African American membership in communities that have limited access to mainstream financial services. The members are economically vulnerable and rely on access to their accounts for basic financial obligations.

The closure of PTCFCU without adequate process affects not only the institution but also the community it serves. The conservatorship sends a message about whether institutions led by and serving African Americans can succeed within the regulatory framework.

# ARGUMENT

## I. The Conservatorship Was Based on an Incomplete Record and Tainted by Conflicts of Interest

Section 206(h)(1)(A) of the Federal Credit Union Act authorizes conservatorship when necessary to conserve assets or protect members or the insurance fund. The determination must be supported by substantial evidence and must not be arbitrary or capricious.

The record here is incomplete. The Confidential Statement does not address the vendor causation documented in the August 9, 2025 complaint. NCUA never responded to that complaint. The Statement does not address the examiner conduct issues documented in the June 25, 2025 complaint. NCUA never responded to that complaint.

The conservatorship was tainted by examiner conflicts of interest. Nathan Franklin examined PTCFCU while employed by NCUA and then immediately returned to a direct competitor of PTCFCU in a senior role. Ashley Mangham participated in the conservatorship as a sub-agent while her spouse serves as Executive Vice President of the institution now servicing PTCFCU members. The record does not show recusals or ethics waivers.

An agency action based on an incomplete record that excludes material evidence and is made by decision-makers with conflicts of interest is arbitrary and capricious.

## II. The Conservatorship Was Disproportionate to the Risk

Conservatorship is an extreme remedy. The Federal Credit Union Act authorizes less restrictive alternatives including cease and desist orders, civil money penalties, and capital directives.

The Confidential Statement does not explain why less restrictive alternatives were inadequate. PTCFCU's net worth ratio as of June 30, 2025 was 7.06 percent, above the regulatory threshold for adequately capitalized status for new credit unions. The subsequent decline was driven in part by charge-offs that the June examination required.

Management had initiated remediation efforts including general ledger cleanup, core system conversion, and termination of high-risk payment channels. Conservatorship prevented these efforts from succeeding.

The post-conservatorship evidence shows that the risks were overstated. The Conservator's staff have not discovered fraud or gross negligence. Operations continue without material incident.

## III. The Lack of Pre-Deprivation Process Violates Due Process

The Fifth Amendment provides that no person shall be deprived of property without due process of law. PTCFCU and its officers and members have property interests in the continued operation of the credit union.

Conservatorship was imposed without advance notice and without opportunity to be heard. Due process generally requires notice and an opportunity to be heard before deprivation occurs.

NCUA has not shown that pre-deprivation process was impossible or would have undermined the conservatorship objectives. PTCFCU was not failing imminently. Member deposits were insured. There was no run on the institution.

The ten-day post-deprivation filing period is too short to develop evidence, retain counsel, and prepare a challenge. By the time judicial review occurs, conservatorship will have created consequences that cannot be reversed.

### IV. A Stay Is Necessary to Preserve Judicial Review

Judicial review will be ineffective if conservatorship actions proceed before the Court can review the record. Once institutional relationships are severed and management authority is eliminated, judicial review cannot restore what has been lost.

Applicant requests a stay of conservatorship actions pending a hearing. A stay would maintain the status quo and preserve the Court's ability to provide relief if the conservatorship was unjustified.

There is a likelihood of success on the merits given the incomplete record and conflicts of interest. Applicant will suffer harm if conservatorship actions proceed, including loss of institutional autonomy and inability to continue serving the community. The balance of harms favors a stay because maintaining the status quo imposes minimal burden on NCUA while denial causes permanent injury. The public interest is served by ensuring that decisions are not tainted by conflicts of interest and that judicial review is meaningful.

## CONCLUSION

People Trust Community Federal Credit Union operated under vendor failures that NCUA did not address, inconsistent supervisory direction, governance breakdown, and conflicts of interest in the examination process. Management documented these issues and escalated them to NCUA. NCUA did not respond.

The conservatorship was imposed based on a record that excluded material evidence, was tainted by examiner conflicts of interest, and was made without opportunity to be heard. The ten-day filing period has limited the evidence that can be developed.

Applicant requests that this Court grant the relief requested below to preserve judicial review and prevent harm to an institution that serves a community with limited access to financial services.

# RELIEF REQUESTED

WHEREFORE, Applicant Arlo Washington requests that this Court:

1. Issue an order staying all conservatorship actions pending a hearing on this application;

2. Set an expedited hearing on this application;

3. Order the National Credit Union Administration Board to show cause why it should not be enjoined from continuing possession and control of People Trust Community Federal Credit Union;

4. Following a hearing, enter an order dissolving the conservatorship and restoring control of the credit union to its board of directors and management;

5. In the alternative, order the NCUA Board to provide Applicant with opportunity to present evidence and respond to the allegations before final action is taken;

6. Award costs to the extent authorized by law; and

7. Grant such other relief as the Court deems just.


Respectfully submitted,

*/s/ Arlo Washington*
Arlo Washington
Applicant Pro Se
Former Chief Executive Officer
People Trust Community Federal Credit Union
Mailing Address:
5300 W. 65th Street
North Little Rock, AR 72209
Phone: (501) 590-1700
Email: arlo@peopletrustloans.org

Dated: January 25, 2026