**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 07 2026

TAMMY DOWNS, CLERK

By_____ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ARLO WASHINGTON                                          APPLICANT

v.                              No. 4:26CV00083

NATIONAL CREDIT UNION                          RESPONDENT
ADMINISTRATION BOARD,

## BRIEF OF RICHARD J. WASHINGTON, ESQ. AS AMICUS CURIAE IN SUPPORT OF PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

### INTRODUCTION

The question before this Court is not merely whether Arlo Washington has standing under 12 U.S.C. § 1786(h)(3). It is whether a federal agency can seize an institution, displace its leadership and governance structure, and then invoke that very displacement to argue that no party capable of bringing suit remains.

Petitioner is proceeding *pro se*. The legal issues this case presents are substantial, and the *pro se* briefing, through no fault of the Petitioner, has not been able to fully develop the constitutional and statutory arguments available to him. This brief is submitted to provide that development, with particular focus on the standing question, the applicable standard of review, and the procedural requirements that govern federal conservatorship decisions.

In ruling on Petitioner's motion for a temporary restraining order, this Court identified the operative inquiry as whether the movant personally suffers harm. *See* Doc. No. 19. That framework applies with equal force to the standing analysis on Respondent's motion to dismiss. When the full record of Petitioner's personal injuries is considered, injuries that were not developed in the TRO papers, the conclusion that he lacks any cognizable interest in this proceeding becomes very difficult to sustain. Factual allegations in this brief that do not appear in the docket record are made upon information and belief. The source of those allegations is amicus curiae's review of the docket in this matter and conversations with Petitioner Arlo Washington.

## ARGUMENT

### I.    ARLO WASHINGTON HAS SUFFERED CONCRETE PERSONAL INJURIES THAT ESTABLISH HIS STANDING TO CHALLENGE THE CONSERVATORSHIP

This Court's TRO ruling identified the relevant inquiry as whether the movant personally suffers harm. Doc. No. 19. That is the same inquiry that governs standing on a motion to dismiss. The record, viewed in its entirety, demonstrates that Arlo Washington has suffered concrete, personal, and ongoing harm as a direct result of the conservatorship. Those injuries are set forth below.

## A. Petitioner's Professional Reputation Is Inextricably Intertwined With People Trust

People Trust Community Federal Credit Union is not simply an institution with which Arlo Washington was affiliated. It is his creation. He founded it, built it, and led it for years as its Chief Executive Officer. His professional identity and his public reputation are inseparable from the institution. He has been invited to speak at engagements across the country on the subject of providing banking and financial services to underbanked and underserved communities, precisely because of the work he did at People Trust.

Following the placement of People Trust into conservatorship, speaking engagements were cancelled. Those cancellations represent a direct, concrete, and quantifiable loss of income and professional opportunity suffered by Arlo Washington personally, not by the credit union. The harm flows to him as an individual whose career and public standing are bound up with an institution that has now been seized by the very agency whose conduct he seeks to challenge. It bears noting that Petitioner received no compensation during his tenure as Chief Executive Officer of People Trust. His connection to the institution was one of mission and community service, not personal financial gain. The speaking engagements that grew from his work there represented the tangible professional recognition of that mission. They were, in a very real sense, the return on years of uncompensated

3

service to an underserved community. Their cancellation following the conservatorship is not a speculative or abstract harm. It is a direct and measurable economic loss suffered by Arlo Washington as an individual, and it is a loss that flows entirely from the agency action he seeks to challenge.

The reputational dimension of this harm is compounded by the nature of the allegations Respondent has introduced in this litigation. TILA violations and financial mismanagement are serious accusations. They attach not only to the institution but to the man whose name the institution bears and whose professional mission it represents. Arlo Washington has a cognizable interest in ensuring that those allegations, which were not part of the original Order of Conservatorship, are subjected to scrutiny rather than accepted as established fact on a motion to dismiss.

### B. The Unauthorized Use of Petitioner's Name and Signature Demonstrates the Depth of His Personal Interest

During the conservatorship, financial instruments bearing what purports to be Arlo Washington's name and signature have been executed without his authorization. This is authorized under 12 U.S.C. § 1786(h)(1)(C), which permits the conservator to use the assets and resources of the credit union in the exercise of its powers. But the practical consequence is that Petitioner's name and signature are being used to conduct financial transactions over which he has no control and to which he has not consented.

Respondent cannot simultaneously use Petitioner's name and signature to conduct the affairs of the conservatorship and argue that he has no personal interest in the proceeding. The fact that these instruments bear his name is itself evidence of how completely his identity is intertwined with People Trust. It is also evidence of a direct personal harm that goes well beyond the generalized interest of a member or a founder.

### C. The Board Exclusion Directive Creates a Fundamental Inequity That This Court Should Not Sanction

Respondent argues that Petitioner lacks standing in part because he was not a member of the Board of Directors. That argument requires context that the pro se briefing was unable to fully provide.

After Arlo Washington established People Trust Community Federal Credit Union, he was informed by the NCUA that he could not serve as a member of the credit union's board. The basis for that directive has never been adequately explained. He complied with it. He served instead as Chief Executive Officer, the institution's primary regulatory contact, and its most public face.

The NCUA now seeks to use that board exclusion, a condition it imposed, as the basis for arguing that Petitioner has no standing to challenge a conservatorship that it ordered. That is a deeply inequitable result. The agency directed him away from board membership, and it now invokes that absence to foreclose his ability to

seek judicial review. A party should not be permitted to benefit from a condition it created in order to strip another party of legal recourse.

### D. The Constitutional Standing Framework Confirms That These Injuries Are Cognizable

The Constitution limits federal courts to deciding actual cases and controversies. From that limitation, the Supreme Court has derived the requirement that any person who invokes the jurisdiction of a federal court must demonstrate three things: a concrete and particularized injury, a causal connection between that injury and the challenged conduct, and the likelihood that a favorable decision will redress the harm. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

This constitutional requirement exists independently of any statute. Even where Congress has structured a particular statutory remedy narrowly, a party who has suffered a concrete personal injury retains the ability to seek such relief as the Constitution permits. Respondent's argument under 12 U.S.C. § 1786(h)(3) addresses the scope of available statutory relief. It does not address whether Petitioner has suffered a constitutionally cognizable injury. Those are separate questions.

The injuries described above, cancelled speaking engagements and lost income, reputational harm from conservatorship-related allegations, and the unauthorized use of his name and signature on financial instruments, are concrete,

6

particularized, and personal to Arlo Washington. They are directly traceable to the NCUA's conservatorship decision. And they are redressable, at least in part, by a judicial determination that the conservatorship was unlawful. The constitutional standing requirement is satisfied.

Moreover, reading § 1786(h)(3) to eliminate all judicial review by disabling the only party authorized to bring suit would raise a serious constitutional problem. Courts must, wherever possible, construe statutes to preserve judicial review of agency action. *See Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). A construction that renders review impossible is not a permissible reading of a federal statute.

## II.    RESPONDENT'S RELIANCE ON BINGHAM UNDERMINES ITS OWN STANDING ARGUMENT AND PLACES THE STANDARD OF REVIEW IN GENUINE DOUBT

Respondent relies on *Bingham v. National Credit Union Administration Board* to argue that the NCUA did not act arbitrarily or capriciously. 927 F.2d 282 (6th Cir. 1991). That reliance is significant for two reasons the Government does not address.

First, the plaintiffs in *Bingham* were the president and vice president of the credit union, institutional officials who held no board positions. The Sixth Circuit did not question their standing to bring suit. One of the plaintiffs held no board

position at all, yet the court addressed the merits of her claims without any suggestion that she lacked standing. The Government's attempt to distinguish Petitioner Washington, who founded People Trust, served as its CEO, and was its primary regulatory contact, from the category of individuals who may challenge a conservatorship is not supported by the very authority it cites.

Second, *Bingham* itself recognized genuine uncertainty about the correct standard of review for NCUA conservatorship decisions. The Sixth Circuit observed that the sole inquiry on judicial review may be whether a statutory ground existed for the appointment, rather than the broader arbitrary and capricious standard the Government applies. If that narrower standard governs, the question before this Court is simply whether the NCUA had a lawful statutory basis for its action. That question cannot be answered without the administrative record, which Respondent has refused to produce. The Government cannot simultaneously invoke *Bingham's* deferential standard while denying the Court and Arlo Washington access to the record needed to apply it.

### III. THE PROMPT CORRECTIVE ACTION FRAMEWORK REQUIRED GRADUATED REMEDIATION BEFORE CONSERVATORSHIP COULD BE IMPOSED

Congress enacted the Prompt Corrective Action framework at 12 U.S.C. § 1790d to ensure that the NCUA responds to declining credit union capitalization through a structured, progressive sequence of remedial steps. The statute establishes

8

distinct categories of capitalization and prescribes specific agency responses for each category.

Conservatorship is an extreme remedy. It is contemplated primarily for institutions that are critically undercapitalized, generally those whose net worth ratio has reached or approached zero. At the time the NCUA placed People Trust into conservatorship, the credit union's net worth ratio was approximately 3.12%. *See* Am. Compl., Doc. No. 8. That figure placed People Trust in the significantly undercapitalized category, not the critically undercapitalized category.

For a significantly undercapitalized institution, the statutory framework prescribes a net worth restoration plan as the appropriate regulatory response. Petitioner had already provided precisely that: a Revised Business Plan submitted on December 22, 2025, less than one month before the conservatorship was imposed. The record raises a substantial question as to whether the NCUA made any meaningful evaluation of that plan before acting.

An agency that bypasses the graduated remedial framework Congress established in favor of an immediate and irreversible remedy does not act in conformity with its statutory authority. The administrative record is the only means by which this Court can determine whether the agency satisfied its statutory

obligations before imposing conservatorship. *See Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983).

## IV. THE TILA ALLEGATIONS ARE IMPERMISSIBLE POST-HOC JUSTIFICATIONS AND FURTHER DEMONSTRATE THE NEED FOR DISCLOSURE OF THE ADMINISTRATIVE RECORD

Respondent's brief introduces, apparently for the first time, the allegation that People Trust committed significant Truth in Lending Act violations. *See* Doc. No. 10. Those allegations were not identified in the original Order of Conservatorship.

Agency action must be judged by the reasons the agency gave at the time it acted, not by justifications developed in subsequent litigation. *See SEC v. Chenery Corp.*, 332 U.S. 194 (1947). If TILA violations were not cited in the original Order of Conservatorship, they cannot now be enlisted to defend it.

The introduction of these allegations in litigation, rather than in the agency's contemporaneous reasoning, causes direct and ongoing harm to Arlo Washington personally. His reputation, his professional standing, and his ability to secure speaking engagements and other opportunities are all affected by public allegations of significant federal consumer protection violations at an institution that bears his name and identity. He is entitled to more than a blanket accusation introduced for the first time in a motion to dismiss.

Due process requires that a person whose reputation and livelihood are materially affected by agency action be given a meaningful opportunity to respond to the factual basis for that action. Where, as here, the agency has refused to produce the administrative record while simultaneously introducing new allegations in litigation, the minimum requirements of procedural fairness have not been met. The administrative record must be produced so that Petitioner, and this Court, can evaluate whether the NCUA's stated justifications are supported by the evidence it actually had before it when it acted.

## V.    THE STRUCTURAL SIGNIFICANCE OF THIS CASE WARRANTS CAREFUL JUDICIAL CONSIDERATION

People Trust Community Federal Credit Union was not an ordinary financial institution. It was founded specifically to provide banking services to a community in Little Rock that has historically lacked meaningful access to conventional financial institutions. That mission was publicly recognized at the highest levels. Petitioner Washington's work with People Trust was featured in a documentary film nominated for an Academy Award at the 96th Academy Awards.

The NCUA's own regulatory framework acknowledges the distinct role of community development financial institutions and the structural realities of serving low-income populations. Institutions that serve communities operating at or near the poverty line will inevitably carry capitalization ratios that look different from those

11

of conventional credit unions. That reality does not excuse noncompliance with applicable law. But it is highly relevant context for evaluating whether the NCUA applied its statutory framework in a reasoned manner or whether it imposed a blunt and irreversible remedy without meaningful consideration of the alternatives that Congress prescribed.

If this case is dismissed without requiring production of the administrative record or giving Arlo Washington an opportunity to defend the institution that he created, this Court will be unable to evaluate whether the NCUA's decision was grounded in law and fact. That result would leave serious constitutional and statutory questions unresolved and would leave both Petitioner and the community he served without any meaningful avenue of redress.

## CONCLUSION

For the foregoing reasons, amicus curiae Richard J. Washington, Esq. respectfully urges the Court to deny Respondent's Motion to Dismiss, order production of the complete administrative record, and permit this matter to proceed to a merits determination. At minimum, the Court should reserve judgment on dismissal until the administrative record is produced and the constitutional and statutory questions raised herein can be fully evaluated.

Dated:      April 7, 2026
            New York, NY

Respectfully submitted,

*Richard J. Washington*

Richard J. Washington, Esq.
NY Fed. Bar No. RW4793
The Law Offices of
Richard J. Washington, P.C.
100 Church Street, Suite 800
New York, New York 10007
(646) 845-7445
Richard@washington-at-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2026, a true and correct copy of the foregoing Brief of Amicus Curiae was served upon counsel for Respondent by United States Mail, addressed to:

Jamie Goss Dempsey
Assistant United States Attorney
425 W. Capitol Ave., Suite 500
Little Rock, Arkansas 72201

Richard J. Washington, Esq.