# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF ARKANSAS

## CENTRAL DIVISION

**ARLO WASHINGTON,**
Plaintiff,

v. Case No. **4:26-cv-00083-**BSM

**NATIONAL CREDIT UNION ADMINISTRATION,**
Defendant.

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 1 2026

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

# EMERGENCY MOTION FOR LIMITED INJUNCTIVE RELIEF FOR ACCESS TO FINANCIAL DATA

## I. INTRODUCTION

Plaintiff, Arlo Washington, proceeding pro se, respectfully moves this Court for narrowly tailored injunctive relief requiring Defendant to provide limited access to certain financial data systems associated with People Trust Community Federal Credit Union.

This request is **distinct from and narrower than prior relief sought**. Plaintiff does not seek to assume control over the institution or interfere with the conservatorship. Instead, Plaintiff seeks only limited access necessary to verify financial information, reconcile records, and prevent further deterioration of financial integrity.

## II. BACKGROUND

1. On or about January 16, 2026, Defendant placed People Trust Community Federal Credit Union into conservatorship.
2. Following that action, Plaintiff lost access to all core financial data systems associated with the institution.

3. Plaintiff previously sought emergency relief from this Court, which was denied.
4. Since that time, financial conditions have continued to deteriorate, and access to underlying data remains unavailable.

# III. NEW AND CONTINUING HARM

Recent financial reporting reflects continued and material decline, including:

- Significant reduction in total assets
- Substantial contraction of the loan portfolio
- Decline in deposits
- Increased operating losses

These conditions demonstrate that financial deterioration is **ongoing and accelerating**.

Additionally, the absence of access to financial data has resulted in:

- Inability to verify account balances
- Inability to reconcile transactions
- Inability to identify errors or inconsistencies
- Inability to assess the accuracy of reported financial information

Absent intervention, these conditions will continue to worsen.

# IV. NARROWLY TAILORED RELIEF REQUESTED

Plaintiff seeks limited and non-disruptive access to financial data, specifically:

1. Read-only access to:
    o Account-level data
    o Transaction histories
    o Loan servicing records
    o General ledger and financial reports
2. Such access may be:
    o Supervised by Defendant
    o Limited in scope or duration
    o Subject to reasonable safeguards imposed by the Court

Plaintiff does **not** seek:

- Authority to move funds

- Operational control
- Interference with conservatorship functions

# V. LEGAL BASIS FOR RELIEF

Limited injunctive relief is appropriate where:

1. **Irreparable Harm Exists**
   The inability to access financial data prevents basic verification and reconciliation, allowing continued deterioration that cannot be remedied after the fact.
2. **Likelihood of Success on the Merits**
   The request is narrowly tailored to obtain access to data necessary for verification and financial accuracy, which is fundamental to due process and institutional integrity.
3. **Balance of Harms Favors Plaintiff**
   The requested relief imposes minimal burden on Defendant while preventing significant and ongoing harm.
4. **Public Interest Supports Relief**
   Ensuring accurate financial records and preventing further deterioration of a community financial institution serves the public interest.

# VI. NECESSITY FOR DATA ACCESS AND RECONSTITUTION

Plaintiff submits that limited access to financial data systems is necessary to properly reconstitute financial records associated with the institution.

Reconstitution requires the ability to:

- Review transaction histories
- Verify account balances
- Reconcile general ledger activity

Such reconstitution cannot be accomplished through external data sources alone. Without direct access to system-level data, any reconstruction of financial records will be materially incomplete and unreliable.

Absent such access, the true financial condition cannot be accurately determined, and ongoing harm cannot be effectively mitigated.

## VII. CONCLUSION

This motion presents a narrow and reasonable request for limited access to financial data. It does not seek to alter control of the institution but is directed solely toward verification, reconciliation, and prevention of further deterioration.

## VIII. REQUEST FOR RELIEF

Plaintiff respectfully requests that this Court:

1. Order Defendant to provide limited, read-only access to financial data systems as described herein;
2. Permit such access under reasonable supervision or safeguards;
3. Order preservation of all financial records; and
4. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Arlo Washington, Pro Se
5 Talais Dr.
Little Rock, Arkansas 72223
arlo@providingequalopportunities.org
(510) 710-6455

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on Defendant on this 21 day of April 2026 by mail.

Arlo Washington

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

CENTRAL DIVISION


ARLO WASHINGTON,

Plaintiff,

v.

NATIONAL CREDIT UNION ADMINISTRATION,

Defendant.


Case No.: 4:26-CV-00083


PROPOSED ORDER GRANTING INJUNCTIVE RELIEF


Before the Court is Plaintiff's Motion for Injunctive Relief to Compel Access to Books and Records. Having reviewed the Motion and being otherwise duly advised, the Court finds that Plaintiff has demonstrated sufficient grounds for injunctive relief.


IT IS THEREFORE ORDERED that:

1. Defendant shall provide Plaintiff reasonable access to the books, records, and operational data of People Trust Community Federal Credit Union;

2. Defendant shall produce the administrative record associated with the conservatorship;

3. Plaintiff or designated representatives shall be permitted to review financial and operational data necessary to assess the institution;

4. This Order shall take effect immediately upon entry.


IT IS SO ORDERED.

Dated this ____ day of _____, 2026.


_____

UNITED STATES DISTRICT JUDGE

**PEOPLE TRUST COMMUNITY FEDERAL CREDIT UNION
POST-CONSERVATORSHIP CONTINGENCY PLAN**

# I. PURPOSE & SCOPE

This Contingency Plan establishes defined triggers, escalation protocols, and corrective actions to ensure the Credit Union maintains safe, sound, and compliant operations following release from conservatorship.

This plan applies to:

- Liquidity risk
- Financial performance
- Operational disruptions
- Compliance deficiencies

# II. GOVERNANCE & AUTHORITY

- **President & CEO (Arnell Willis Sr.)**: Executes contingency actions
- **Board of Directors**: Oversight and approval of material actions
- **Independent Accounting / Compliance**: Monitoring and reporting

**Escalation Requirement:**
Any trigger event must be reported to the Board within **24 hours**

# III. LIQUIDITY CONTINGENCY PLAN

## Trigger Thresholds

- Deposit outflow ≥ **10% over 5 business days**
- Available liquidity < **120% of 30-day cash obligations**
- Daily cash balance falls below **minimum operating threshold ($250,000)**

## Required Actions

- Activate emergency liquidity sources (lines of credit, partner funding)
- Suspend non-essential disbursements
- Increase daily liquidity monitoring to **twice daily**

- Board notification within **24 hours**

## Outcome Objective

Maintain uninterrupted member access to funds

# IV. FINANCIAL PERFORMANCE CONTINGENCY

## Trigger Thresholds

- Net Worth Ratio declines by $\geq$ **50 basis points (0.50%)**
- Delinquency ratio exceeds **8%**
- Charge-offs exceed **5% of portfolio**

## Required Actions

- Immediate expense reduction (non-essential costs)
- Tighten underwriting standards
- Increase collections activity
- Weekly financial performance reporting to Board

## Outcome Objective

Stabilize earnings and protect capital position

# V. OPERATIONAL CONTINGENCY PLAN

## Trigger Events

- Core system outage
- ACH, card, or wire service disruption
- Vendor system failure

## Required Actions

- Activate backup/manual processing procedures
- Notify vendor and escalate within **2 hours**
- Maintain transaction logs for reconciliation
- Notify members within **24 hours if disruption is material**

**Outcome Objective**

Ensure continuity of critical member services

# VI. INTERNAL CONTROLS CONTINGENCY

## Trigger Events

- Reconciliation discrepancies
- Missing or incomplete financial data
- Breakdown in segregation of duties

## Required Actions

- Immediate reconciliation review and correction
- Temporary suspension of affected processes
- Independent accounting review
- Report findings to Board within **48 hours**

## Outcome Objective

Maintain accuracy and integrity of financial records

# VII. COMPLIANCE & REGULATORY CONTINGENCY

## Trigger Events

- BSA/AML deficiencies identified
- CTR/SAR filing delays or errors
- Examination findings or audit exceptions

## Required Actions

- Implement Corrective Action Plan (CAP) within **5 business days**
- Engage external compliance support if needed
- Increase monitoring frequency
- Notify regulator if required

## Outcome Objective

Ensure full regulatory compliance and timely remediation

# VIII. MEMBER SERVICE CONTINUITY

## Trigger Events

- Service disruptions (cards, access, payments)
- Increase in member complaints

## Required Actions

- Maintain minimum service levels (account access, withdrawals)
- Deploy dedicated response team
- Communicate updates to members within **24–48 hours**

## Outcome Objective

Minimize member impact and maintain confidence

# IX. MONITORING & REPORTING FRAMEWORK

- **Daily:** Cash position, transaction monitoring
- **Weekly:** Financial performance and risk indicators
- **Monthly:** Full board reporting package
- **Quarterly:** Independent review (if applicable)

# X. PLAN TESTING & REVIEW

- Quarterly review by management and Board
- Annual stress testing of contingency scenarios
- Updates made based on operational or regulatory changes

# XI. CERTIFICATION

This Contingency Plan reflects the Credit Union's commitment to proactive risk management, operational resilience, and regulatory compliance.

**Respectfully submitted,**

Arlo Washington

**Arlo Washington**
Plaintiff, Pro Se
5 Talais Dr.
Little Rock, Arkansas 72223
arlo@providingequalopportunities.org

# EXHIBIT A

## NCUA CALL REPORT – FINANCIAL DECLINE ANALYSIS

**People Trust Community Federal Credit Union**

**Quarter Ending March 31, 2026**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF ARKANSAS**

**CENTRAL DIVISION**

**PEOPLE TRUST COMMUNITY FEDERAL CREDIT UNION**
Plaintiff,

v. Case No. **4:26-cv-00083**

**NATIONAL CREDIT UNION ADMINISTRATION**
Defendant.

## EXHIBIT DESCRIPTION

This Exhibit contains the National Credit Union Administration ("NCUA") Financial Performance Report (Call Report) for People Trust Community Federal Credit Union, together with a summary analysis highlighting the material financial decline that has occurred since the imposition of conservatorship.

Source Document:

## SUMMARY OF MATERIAL DECLINE

The following figures are derived directly from the NCUA Call Report for the quarter ending March 2026 and demonstrate a rapid deterioration in the Credit Union's financial condition:

## 1. Total Assets

- December 2025: ~$2,658,332
- March 2026: ~$1,454,253
- **Decline:** Approximately **45.1%**

## 2. Loan Portfolio (Total Loans)

- December 2025: ~$307,407
- March 2026: ~$118,334
- **Decline:** Approximately **61.5%**

## 3. Member Deposits (Shares & Deposits)

- December 2025: ~$3,151,222
- March 2026: ~$2,462,137
- **Decline:** Approximately **21.9%**

## 4. Net Income (Loss)

- December 2025: (~$13,892)
- March 2026: (~$72,490)
- **Increase in Loss:** Greater than **400%**

## 5. Observations

- The Credit Union has experienced **rapid contraction of assets and lending activity**
- Member deposits have significantly declined, indicating **loss of confidence and access issues**
- Losses have accelerated substantially, demonstrating **ongoing operational deterioration**
- Financial data reflects **material inconsistencies and unexplained fluctuations,** underscoring the need for direct system access

# RELEVANCE TO EMERGENCY RELIEF

This Exhibit demonstrates that:

1. The Credit Union is experiencing **active and accelerating financial harm**
2. The conservatorship has resulted in **decline rather than stabilization**
3. Immediate access to core data systems is necessary to:
   o Verify financial records
   o Reconcile member accounts
   o Prevent further losses
   o Implement a reconstitution plan

Without such access, the Credit Union cannot halt the ongoing deterioration reflected in the Call Report.

# CONCLUSION

The NCUA's own reported financial data confirms that the Credit Union has suffered significant and measurable decline since the imposition of conservatorship. This evidence supports Plaintiff's request for immediate injunctive relief to prevent further irreparable harm and to restore access to critical financial data.

**Submitted by:**
**Arlo Washington, Pro Se**

From:     arlo washington
To:       Arlo Washington
Subject:  Call report
Date:     Monday, April 20, 2026 4:42:59 PM

## National Credit Union Administration
Financial Performance Report - Financial Summary

### Quarterly, Ending Mar 2026

| Charter | Name | Street | City | State | ZipCode | Region |
|---------|------|--------|------|-------|---------|--------|
| 24940 | PEOPLE TRUST COMMUNITY | PO Box 241488 | Little Rock | AR | 72223 | 2 |

| Line Item | Mar-2025 | Jun-2025 | %Chg | Sep-2025 | %Chg | Dec-2025 | %Chg | Mar-2026 | %Chg |
|-----------|----------|----------|------|----------|------|----------|------|----------|------|
| **ASSETS:** | Amount | Amount | | Amount | | Amount | | Amount | |
| Cash & Other Deposits[1] | 1,147,176 | 1,209,995 | 5.5 | 1,031,180 | -14.8 | 840,984 | -18.4 | 206,801 | -75.4 |
| TOTAL INVESTMENTS | 438 | 0 | -100.0 | 249,438 | N/A | 250,438 | 0.4 | 250,438 | 0.0 |
| Loans Held for Sale | 0 | 0 | N/A | 0 | N/A | 0 | N/A | 0 | N/A |
| TOTAL LOANS | 841,478 | 1,059,980 | 26.0 | 1,146,935 | 8.2 | 1,050,223 | -8.4 | 819,534 | -22.0 |
| (Allowance for Loan & Lease Losses or Allowance for Credit Losses on Loans & Leases ) | (11,434) | (12,931) | 13.1 | (16,406) | 26.9 | (103,469) | 530.7 | (118,335) | 14.4 |
| Land And Building | 0 | 0 | N/A | 0 | N/A | 9,825 | N/A | 0 | -100.0 |
| Other Fixed Assets | 302,945 | 323,954 | 6.9 | 455,127 | 40.5 | 361,379 | -20.6 | 154,627 | -57.2 |
| NCUSIF Deposit | 44,932 | 44,099 | -1.9 | 44,099 | 0.0 | 44,099 | 0.0 | 44,099 | 0.0 |
| All Other Assets | 305,341 | 414,650 | 35.8 | 366,036 | -11.7 | 196,853 | -46.2 | 97,089 | -50.7 |
| TOTAL ASSETS | 2,630,876 | 3,039,747 | 15.5 | 3,276,409 | 7.8 | 2,650,332 | -19.1 | 1,454,253 | -45.1 |
| **LIABILITIES, SHARES & EQUITY:** | | | | | | | | | |
| Accounts Payable, Accrued Interest on Borrowings, & Other Liabilities[2] | 20,633 | 31,259 | 51.5 | 146,380 | 368.3 | 50,063 | -65.8 | -52,373 | -204.6 |
| Accrued Dividends & Interest Payable on Shares & Deposits | 0 | 0 | N/A | 16,462 | N/A | 3,079 | -81.3 | 0 | -100.0 |
| Allowance for Credit Losses on Off-Balance Sheet Credit Exposures | 0 | 0 | N/A | 0 | N/A | 0 | N/A | 0 | N/A |
| Borrowings Notes & Interest Payable | 0 | 0 | N/A | 0 | N/A | 0 | N/A | 369,312 | N/A |
| TOTAL SHARES & DEPOSITS | 2,374,862 | 2,793,746 | 17.6 | 3,046,414 | 9.0 | 3,151,222 | 3.4 | 2,462,137 | -21.9 |
| TOTAL LIABILITIES | 2,395,495 | 2,825,005 | 17.9 | 3,209,256 | 13.6 | 3,204,364 | -0.2 | 2,779,076 | -13.3 |
| Undivided Earnings | 235,381 | 214,742 | -8.8 | 0 | -100.0 | -554,032 | N/A | -1,324,823 | -139.1 |
| Other Reserves | 0 | 0 | N/A | 67,153 | N/A | 0 | -100.0 | 0 | N/A |
| TOTAL EQUITY | 235,381 | 214,742 | -8.8 | 67,153 | -68.7 | -554,032 | -925.0 | -1,324,823 | -139.1 |
| TOTAL LIABILITIES, SHARES, & EQUITY | 2,630,876 | 3,039,747 | 15.5 | 3,276,409 | 7.8 | 2,650,332 | -19.1 | 1,454,253 | -45.1 |
| **INCOME & EXPENSE:** | | | | | | | | | |
| Interest Income* | 163,945 | 191,254 | -41.7 | 295,739 | 3.1 | 144,492 | -63.4 | 18,505 | -48.8 |
| Interest Expense* | 33,833 | 43,357 | -35.9 | 53,522 | -17.7 | 72,595 | 1.7 | 19,738 | 8.8 |
| Net Interest Income* | 130,112 | 147,897 | -43.2 | 242,217 | 9.2 | 71,897 | -77.7 | -1,233 | -106.9 |
| Provision for Loan/Lease Losses or Total Credit Loss Expense* | 3,751 | 3,751 | -50.0 | 113,518 | 1,917.6 | 247,057 | 63.2 | 244,485 | 295.8 |
| Non-Interest Income* | 23,525 | 77,642 | 65.0 | 116,943 | 0.4 | 264,861 | 69.9 | 28,376 | -57.1 |
| Non-Interest Expense* | 288,167 | 430,706 | -25.3 | 602,148 | -6.8 | 1,017,392 | 26.7 | 507,564 | 99.6 |
| NET INCOME (LOSS)* | -138,281 | -208,918 | 24.5 | -356,506 | -13.8 | -927,691 | -95.2 | -724,906 | -212.6 |

\* Income/Expense items are year-to-date while the related %change ratios are annualized.

\# Means the number is too large to display in the cell.

1- Prior to March 2022, Time and Other Deposits were included in Investments.

2- Prior to 3/31/22 includes "Subordinated Debt Included In Net Worth" and "Non-Trading Derivative Liabilities".

Arlo Washington